294 P.2d 668

Carl MONTHAN, d/b/a Carl Monthan Nursery, Appellant,

v.

CITY OF TUCSON, a municipal corporation, Appellee.

No. 6010.

Supreme Court of Arizona.

March 6, 1956.

Houston & Nihan, Tucson, for appellant.

Harry L. Buchanan and Harold R. Neubauer, City Attys., F. Dale Healy, Jr., and Charles C. Gatewood, Asst. City Attys., Tucson, for appellee.

LA PRADE, Chief Justice.

Plaintiff-appellant, Monthan, sought a declaratory judgment in the court below in order to ascertain whether he, as one engaged in the business of operating a nursery within the corporate limits of the City of Tucson, was obliged to pay that

city's occupational license tax. Monthan based his action upon the premise that Sections 49–1301, 49–1302, A.C.A.1939 [A.R.S. §§ 3–561 to 3–563], exempt agricultural "producers" of "food products" from the imposition of such taxes by the municipality. From an adverse judgment plaintiff-appellant has prosecuted this appeal.

The pertinent facts are: Carl Monthan, dba Carl Monthan Nursery, operates a nursery in Tucson. His operation consists of planting, cultivating, raising and growing agricultural and horticultural products of various kinds. Plaintiff testified that all plants sold are grown by him from seed, cuttings or small seedlings, and that over one-half of his acreage in 1953 was devoted to food-bearing agricultural products, primarily fruit trees. In 1953 appellant paid under written protest to the City of Tucson $40 in two installments, which constituted the assessment levied against him for that year pursuant to the city's occupational tax. Shortly after making the second of these tax payments appellant brought this action. The trial court found as a fact that all of plaintiff's sales during 1953 were of non-food-bearing agricultural products and concluded that a nurseryman who grows plants, shrubs and small trees and sells them for transplanting before they are capable of producing is not a producer of food products under Sections 49–1301, 49–1302, supra.

Appellant's entire case is based on the legal premise that the above sections exempt him from the municipal occupational tax. No attack is made on the occupational license tax in the absence of these provisions. Since the entire case turns on the construction of Sections 49–1301, 49–1302, supra, the pertinent portions thereof are here set forth.

"49–1301. Right to sell not to be restricted—Terms defined.—The producers of food products on agricultural lands, farms and gardens in this state, shall never under any pretext be denied or restricted in the right to sell and dispose of the same, except in the manner and to the extent herein provided, and subject to inspection by lawful authority, so long as such inspection is uniform as to the same product, and without cost to the producer thereof. 'Producer,' within the meaning hereof shall include the owners, proprietors or tenants of the agricultural lands, orchards, farms and gardens, whereon or whereby such food products are grown, raised, or prepared for market; 'food products,' shall include every product of the soil in its natural or manufactured state, and all swine, fowls, eggs and milk, and all products arising therefrom. * * *"

"49–1302. No license tax or penalty can be imposed on a producer.—No tax, license, or other burden or fee shall be

imposed or levied upon, demanded or collected from any producer because of any sale of any such products; * * * nor shall any municipal ordinance, which in any manner seeks to impose or subject him to any such tax, fee or penalty, have any force or effect, * * *."

■ According to Section 49–1301 the term "food products" is defined to "include every product of the soil in its natural or manufactured state, and all swine, fowls, eggs and milk, and all products arising therefrom". Appellant argues that the meaning of these words is clear and that as a result *every* product of the soil is a food product. Appellee contends that when the original title of the article and the wording of Section 49–1301 in its entirety are examined as one complete whole it becomes apparent that the word "edible" should be read into the above definition. According to appellant every product raised from the soil, including such obvious non-food articles as fir shrubs, oleanders, privet hedges, cotton, rose bushes and flowers of every description, is to be deemed a "food product" under the statute and therefore that the producer thereof is exempt from a municipal occupational license fee. We cannot agree with this contention. Clearly none of these products can be considered an article of food as that word is commonly used. Can we say then that the legislature intended by the above definition to include such obvious non-food products? In order to answer this question let us first examine the definition itself. It not only includes "every product of the soil" but also contains the words "all swine, fowls, eggs and milk". Since no one would dispute that these latter items are all edible food products it follows that the first portion of the definition contemplated a similar class of articles, namely *edible* products of the soil, and not something entirely different and under no possible interpretation a food product. If this were not sufficient we have only to look at the first sentence of Section 49–1301 which in part reads:

"The producers of *food* products on agricultural lands, farms and gardens * * *." (Emphasis supplied.)

The specific use of the word "food" in conjunction with "products" implies that there are also producers of non-food products on agricultural lands, farms and gardens. Otherwise there was no reason to specify *food* products. Put in another way, if "food products" means everything grown in the soil the first sentence is superfluous in its use of the word "food" and would

make good sense only if it read: "The producers of products on agricultural lands, farms and gardens" or "The producers of agricultural and horticultural products". Obviously food products as used in Section 49–1301 constitute only one part or segment of all things capable of being grown in the soil, namely edible products.

In addition to the above, it is worthy of note that the original title of this statute as enacted, Ch. 17, Sess. L.1917, read as follows:

"Defining the Rights of the Producers of Farm, Garden and Agricultural *Food* Products to Sell and Dispose of the Same * * *." (Emphasis supplied.)

We need not belabor this point further.

One question remains: Do fruit *trees* which are grown and sold for transplanting constitute a "food product"? For the reasons given above a fruit tree is not an edible food product. As a result fruit trees do not fall within the scope of Sections 49–1301, 49–1302, supra, and the sale of such does not exempt the producer from taxation or license fees.

Judgment affirmed.

UDALL, WINDES, PHELPS and STRUCKMEYER, JJ., concur.